UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SYNTRIX BIOSYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> ILLUMINA, INC., <br><br> Defendant. | CASE NO. C10-5870 BHS <br><br> ORDER DENYING PLAINTIFF'S MOTION TO STRIKE AND GRANTING IN PART AND DENYING IN PART THE PARTIES' *DAUBERT* MOTIONS |

This matter comes before the Court on Plaintiff Syntrix Biosystems, Inc.'s ("Syntrix") motion to strike (Dkt. 145) and motion to exclude (Dkt. 150); and Illumina, Inc.'s ("Illumina") motions to exclude (Dkts. 168 & 172). The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby denies the motion to strike and grants in part and denies in part the motions to exclude for the reasons stated herein.

**I. PROCEDURAL HISTORY**

On January 22, 2013, Syntrix filed a motion to exclude certain testimony of Dr. Milan Mrksich (Dkt. 150) and a motion to strike the supplemental information of Dr.

ORDER - 1

Mrksich (Dkt. 145); and Illumina filed a motion to exclude the opinions of Alan Ratliff (Dkt. 168) and Dr. Michael Metzker (Dkt. 172). On February 4, 2013, the parties responded. Dkts. 187, 192, 204, & 207. On February 8, 2013, Syntrix replied to Illumina's response to Syntrix's motion to strike. Dkt. 237.

## II. DISCUSSION

**A.     Motion to Strike**

Fed. R. Civ. P. 37(c)(1) "forbid[s] the use at trial of any information required to be disclosed by [Fed. R. Civ. P.] 26(a) that is not properly disclosed." *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008) (quoting *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001)). The party facing sanctions bears the burden of proving that its failure to disclose the required information was substantially justified or is harmless. *Torres v. City of L.A.*, 548 F.3d 1197, 1213 (9th Cir. 2008).

In this case, Syntrix argues that the supplemental report of Dr. Mrksich should be stricken and that he should not be allowed to testify about its contents. Dkt. 145 at 2. Illumina responds that the information provided does not alter Dr. Mrksich's substantive opinions, the information was timely produced, and, even if there is a violation of the rules, the error is harmless and can be corrected by additional depositions before trial. Dkt. 207. The Court agrees that any possible violation can be mitigated. During the pretrial conference, pursuant to the Court's suggestion, the parties agreed to cure the alleged violation of Dr. Metzker's supplemental information via a subsequent deposition and cross-examination. It's arguable that Dr. Metzker provided a wholly new opinion as

infringement whereas Dr. Mrksich has only provided new raw numbers relating to the infringing products, which may be entered into previously disclosed calculations. Solving problems associated with new opinions is generally more difficult than solving problems associated with new data. Therefore, the Court denies Syntrix's motion to strike and exclude Dr. Mrksich's supplemental disclosure because the Court finds that the parties may resolve any problem with subsequent depositions and cross-examination.

**B.** *Daubert* **Motions**

Expert testimony is admissible if it is "scientific, technical, or other specialized knowledge" that "will help the trier of fact to understand the evidence or to determine a fact in issue," and "the testimony is based on sufficient facts or data . . . the testimony is the product of reliable principles and methods; and the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. The court acts as a gatekeeper to ensure that expert testimony "is both relevant and reliable." *Avila v. Willits Envtl. Remediation Trust*, 633 F.3d 828, 836 (9th Cir. 2011). The court may apply four nonexclusive factors to determine whether proffered expert opinion is developed by the scientific method or is "junk science":

> District court judges are to consider not only (1) whether the method has gained general acceptance in the relevant scientific community, but also (2) whether the method has been peer-reviewed, (3) whether the method "can be (and has been) tested," and (4) whether there is a "known or potential rate of error." [*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 594 (1993)] . . . . [T]he Daubert inquiry is flexible . . . . "One very significant fact" is whether the expert has "developed [his] opinions expressly for purposes of testifying," since "a scientist's normal workplace is the lab or the field, not the courtroom or the lawyer's office." [*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1317 (9th Cir.), *cert. denied*, 516 U.S. 869 (1995) ("*Daubert II*")]. That the expert failed to

>subject his method to peer-review and to develop his opinion outside the litigation is not dispositive, but if these guarantees of reliability are not satisfied, the expert "must explain precisely how [he] went about reaching [his] conclusions and point to some objective source . . . to show that [he has] followed the scientific method, as it is practiced by (at least) a recognized minority of scientists in [his] field." *Id*.

*Lust v. Merrell Dow Pharmaceuticals, Inc.*, 89 F.3d 594, 597 (9th Cir. 1996) (quoting *Daubert II*, 43 F.3d at 1317–1319. "[T]he test under Daubert is not the correctness of the expert's conclusions but the soundness of his methodology." *Daubert II*, 43 F.3d at 1318. The gatekeeping function applies to all expert opinions, whether based on specialized, technical, or scientific knowledge. *Kumho Tire Co.., Ltd. v. Carmichael*, 526 U.S. 137, 148–49 (1999). We "determine reliability in light of the particular facts and circumstances of the particular case." *Id*. at 158.

### 1.     Dr. Mrksich

Syntrix moves to exclude certain testimony of Dr. Mrksich for numerous reasons. Dkt. 150. To the extent that Syntrix moves to exclude based on the information provided in Dr. Mrksich's supplement produced January 16, 2013, the Court denies the motion because it is repetitive of Syntrix's motion to strike. The Court will more substantively address the remaining issues.

First, Syntrix argues that Dr. Mrksich "skews the data in such a manner that makes it unreliable and not representative of the actual BeadChips." Dkt. 150 at 6. Illumina counters that "Syntrix argument makes no sense." Dkt. 204 at 3. The Court agrees to the extent that Syntrix has failed to show that data is skewed to an unreliable, irrelevant extent.

Second, Syntrix argues that Dr. Mrksich's model includes unrealistic end points that would allow for the physical impossibility of the beads lying below the bottom of the well. Dkt. 150 at 7–9. Illumina, however, has cited the portion of Dr. Mrksich's report that accounts for negative position heights. Dkt. 204 at 6. Therefore, this appears to be a nonissue.

Third, Syntrix argues that Dr. Mrksich's testimony should be limited to the actual alleged infringing products that he tested, which was not all of the products. Dkt. 150 at 9. Illumina concedes that Dr. Mrksich will testify "consistent with the disclosures he made in his report." Dkt. 204 at 7. Therefore, this appears to be a nonissue.

Fourth, Syntrix argues that Dr. Mrksich presents unreliable information regarding 2-micron BeadChips. Dkt. 150 at 10. Illumina "contends that the cited documents adequately support Dr. Mrksich's opinion on the issue of 'process agents.'" Dkt. 204 at 8. Illumina, however, is incorrect. The first document does not support the conclusion of losses over 20% because it shows losses of only 19.7%. The second document is a redline revision of comments to a manufacturing process explaining improvement to the 19.7% loss. The Court finds that Syntrix has met its burden to exclude paragraphs 160 & 161 from Dr. Mrksich's report as well as any testimony on these opinions.

Fifth, Syntrix argues that Dr. Mrksich presents no evidence regarding Accused Infringing Assays. Dkt. 150 at 11. Illumina contends that Dr. Mrksich may present evidence that this product is not infringed because the infringement of this product requires infringement of an independent claim and Dr. Mrksich has analyzed products under the independent claim. Dkt. 204 at 9. Moreover, Illumina contends that Dr.

ORDER - 5

1 Mrksich has provided opinion on Illumina's assays that are not directly linked to
2 Syntrix's patent. *Id.* Therefore, the Court denies Syntrix's motion on this issue.
3       Finally, Syntrix moves to exclude Dr. Mrksich's report and testimony as to
4 Illumina's argument of non-infringement on the "continuous" limitation and affirmative
5 defenses of anticipation and obviousness. Dkt. 150 at 12–14. These issues have been
6 squarely addressed in the Court's order denying the parties' summary judgment motions.
7 *See* Dkts. 183 at 5–8 (affirmative defenses) & 236 at 7. Based on the reasoning contained
8 therein, the Court denies Syntrix's motion.
9       Therefore, the Court grants in part and denies in part Syntrix's motion to exclude
10 the report and testimony of Dr. Mrksich.
11     **2.    Dr. Metzker**
12       Illumina moves to exclude Dr. Metzker's opinions on infringement, information
13 relating to Syntrix's state law claims, and the enablement of certain pieces of prior art.
14 Dkt. 172.
15            **a.    "Substantially Uniform Thickness"**
16       Illumina argues that the Court should exclude Dr. Metzker's opinion on the
17 "substantially uniform thickness" limitation because it "is not based on sufficient facts or
18 data and is not the product of reliable principles and methods." Dkt. 172 at 5. The Court
19 construed this limitation in part to require that "the thickness of the coating varies by no
20 more than 30% over the entire coated area." Dkt. 75 at 6. It's undisputed that the
21 protrusion height of particles above the substrate is one of the determinative factors as to
22 whether the accused products fall within the scope of this limitation. Syntrix contends

1  that "[u]nsuprisingly, the experts disagree on which statistical data should be used to
2  calculate the protrusion height." Dkt. 192 at 3. Syntrix goes on to show that Illumina's
3  problems with Dr. Metzker's opinion go to the weight and are not the type of
4  fundamental problems that should result in exclusion of the evidence altogether. *Id*. at 3–
5  6. The Court agrees and, therefore, denies Illumina's motion on this issue.

6                     **b.**      **Failure to Follow Claim Construction Order**

7         The Court has discretion to exclude expert testimony "as irrelevant because it [is]
8  based on an impermissible claim construction . . . ." *Liquid Dynamics Corp. v. Vaughn*
9  *Co., Inc.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006).

10        In this case, Illumina argues that portions of Dr. Metzker's opinion should be
11  excluded as irrelevant because they are based on an improper claim construction. Dkt.
12  172 at 5–12. With regard to the "gelled network" limitation and the linking of the
13  particles, Illumina's arguments were denied on summary judgment. Dkt. 236 at 5.

14        With regard to the "substrate" limitation, Illumina's arguments are confusing.
15  First, Illumina appears to argue that Dr. Metzker's opinions are irrelevant because he
16  treats optional embodiments as requirements of the claim. *See, e.g.*, Dkt. 172 at 8 ("Dr.
17  Metzker treats flatness as a requirement."). The Court declines to exclude these opinions
18  because whether specific embodiments or products characteristic of specific
19  embodiments are encompassed within a claim limitation is relevant evidence. On the
20  other hand, if Dr. Metzker attempts to narrow the claim limitation to specific
21  embodiments to overcome indefiniteness or prior art (Dkt. 172 at 8), then the testimony
22

may be irrelevant and inadmissible. This possible issue, however, may be adequately handled during trial.

Second, Illumina argues that "Dr. Metzker's analysis of the 'substrate' limitation is also unreliable because it ignores obviously relevant portions of the patent's 'Substrate Selection and Preparation' discussion." Dkt. 172 at 9. Illumina contends that it is not a "competent" analysis and that it "is not good enough to support an expert opinion." *Id*. at 9–10. These issues, however, are subjects of cross-examination because they go to the weight of the evidence and not the admissibility. Therefore, the Court denies the motion on the "substrate issue."

With regard to the "known discrete full thickness volume" limitation, Illumina basically argues that Dr. Metzker may not offer testimony that narrows the limitation to overcome indefiniteness. Dkt. 172 at 10–12. Although the Court agrees, this does not make his opinions as to how the accused product falls within the scope of the claims irrelevant or unreliable. Therefore, the Court denies Illumina's motion on this issue.

      **c.**    **Information Relating to State Law Claims**

Illumina moves to exclude a number of "improper opinions relating to" Syntrix's state law claims. Dkt. 172 at 12. Syntrix argues that the opinions that support the now dismissed state law claims also support Syntrix's position that the patent is not invalid and claim for willful infringement. Dkt. 192 at 12–15. The Court agrees to a certain extent. For example, Dr. Metzker's opinions as to secondary considerations of non-obviousness are admissible and will help the jury to understand the issue. Dkt. 192 at 13. Moreover, Dr. Metzker's opinions as to the extent of technical information that was

1 disclosed to Illumina and the similarities between the disclosed information and the

2 Dickson application are relevant to willful infringement and will help the jury understand

3 the issue of willfulness. *Id*. at 14. On the other hand, the jury does not need an expert

4 opinion on issues such as the similarities between the words "Syntrix" and "Sentrix."

5 Dkt. 172 at 15–16. Therefore, the Court denies the motion to exclude all of this evidence

6 with the understanding that specific objections will be addressed when inadmissible

7 testimony is proffered.

8         **d.**     **Enablement**

9 For a reference to anticipate: "[f]irst, the reference must disclose each and every

10 element of the claimed invention, whether it does so explicitly or inherently." *In re*

11 *Gleave*, 560 F.3d 1331, 1334 (Fed. Cir. 2009). "Second, the reference must enable one of

12 ordinary skill in the art to make the invention without undue experimentation." *Id*.

13 (quoting *Impax Labs., Inc. v. Aventis Pharms. Inc.*, 545 F.3d 1312, 1314 (Fed. Cir. 2008))

14 (internal quotation marks omitted).

15 In this case, Illumina argues that Dr. Metzker "applied the incorrect standard in

16 reaching his opinions that the prior art references were not enabling." Dkt. 172 at 18.

17 The Court agrees as to some opinions. For example, Dr. Metzker opines that "Chee II

18 does not enable one of ordinary skill in the art . . . [because] there were no actual

19 reductions to practice of any of the embodiments described in the application." Ex. B ¶

20 203. This opinion is improper because a valid patent does not require an actual reduction

21 to practice as it is widely known that an individual may possess an enforceable patent

22 without possessing an actual product. In other words, the law only requires sufficient

disclosure to enable one to reduce the invention to practice. *See In re Gleave*, 560 F.3d at 1334.

Syntrix, however, contends that when read in the context of the entire section of Dr. Metzker's opinion, the contested opinion is admissible testimony. Dkt. 192 at 17. The Court disagrees as no context will save the incorrect statement. Therefore, the Court grants the motion on this opinion and any other opinion of prior art based on this particular reasoning. The Court notes that Dr. Metzker offers other admissible opinions on the issue of anticipation, and the Court is confident that the attorneys will seek to offer only those opinions at trial.

### 3. Mr. Ratliff

Illumina moves to exclude the report of Mr. Ratliff, Syntrix's damages expert. Dkt. 168. Illumina contends that (1) Mr. Ratliff relies on licenses that have no demonstrative link to the technology at issue; (2) Mr. Ratliff improperly supports his rate determination; and (3) Mr. Ratliff improperly speculates as to Illumina's license with Tufts University. *Id.* at 5. Syntrix counters that Illumina's "complaints 'go to the weight of the testimony and not its admissibility.'" *Activision Networks, Inc. v. Verizon Comm'ns, Inc. et al.*, 694 F.3d 1312, 1333 (Fed. Cir. 2012). The Court agrees.

First, Mr. Ratliff relied on previous expert testimony that the licenses in question were related to DNA microarrays. If Illumina elects to attack that link or the prior expert testimony at trial, then it may. But this is not a sufficient reason to exclude Mr. Ratliff's report and testimony.

Second, Illumina contends that Mr. Ratliff improperly considers Dr. David Walt's personal stake in Illumina. Dkt. 168 at 9–12. However, the inference that Tufts University received a lower royalty rate from Illumina in return for its doctor receiving a partial stake in Illumina is reasonable. Attacking this inference goes to the weight of Mr. Ratliff's opinion and not to any fundamental deficiency.

Finally, Illumina contends that Mr. Ratliff should have considered the price of Illumina stock when Tufts bought the stock ($5,000) and not the value when Tufts sold the stock ($7.7 million). Dkt. 168 at 12–13. The inference that Tufts agreed to a lower royalty rate based on a gamble that Illumina would be successful is a reasonable inference as is the fact that Illumina was actually successful. Attacking this inference and fact goes to the weight and not to any fundamental deficiency. Therefore, the Court denies Illumina's motion to exclude Mr. Ratliff's testimony and opinion.

### III. ORDER

Therefore, it is hereby **ORDERED** that Syntrix's motion to strike (Dkt. 145) is **DENIED** and the parties' motions to exclude (Dkts. 150, 168, & 172) are **GRANTED in part** and **DENIED in part** as stated herein.

Dated this 15th day of February, 2013.

BENJAMIN H. SETTLE
United States District Judge