UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SYNTRIX BIOSYSTEMS, INC.,

          Plaintiff,

v.

ILLUMINA, INC.,

          Defendant.

CASE NO. C10-5870 BHS

ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR NEW TRIAL

This matter comes before the Court on Defendant Illumina, Inc.'s ("Illumina") motion for judgment as a matter of law or new trial (Dkt. 363). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby denies the motion for the reasons stated herein.

## I. PROCEDURAL HISTORY

On November 24, 2010, Plaintiff Syntrix Biosystems, Inc. ("Syntrix") filed a complaint against Illumina asserting numerous causes of action, including alleged infringement of United States Patent No. 6,951,682 (the "'682 Patent"). Dkt. 1.

On June 11, 2012, the Court issued a claim construction order. Dkt. 75. In that order, the Court declined to adopt Illumina's proposed limitations for the terms "gelled network," "particles," and "porous coating." With regard to the term "gelled network,"

the Court declined to construe the term to exclude "a planar, two-dimensional configuration of particles." *Id*. at 11–14. With regard to the term "particles," the Court declined to construe the term to exclude objects having a size greater than 1000 Å. *Id*. at 14–15.

On December 19, 2012, Illumina moved for summary judgment arguing in part that (1) the asserted claims were invalid and (2) the '682 Patent had a priority date no earlier than December 1, 1998. Dkt. 101 at 14–22. On February 7, 2013, the Court denied the motion on both of these issues because questions of fact existed for the jury. Dkt. 236 at 8–9.

In February and March of 2013, the Court held an eleven-day trial. On March 14, 2013, the jury returned a verdict in favor of Syntrix. Dkt. 285. Specifically, the jury found that the patent was infringed, the patent was not invalid, and that Syntrix had proved that it was entitled to a reasonable royalty of 6% for past infringement. *Id*.

## II. FACTUAL BACKGROUND

The Court finds that an explanation of the facts of this case is unnecessary because the evidence challenged by Illumina represents a small portion of the trial. Therefore, the Court will cite relevant evidence throughout the discussion of the issues presented.

## III. DISCUSSION

As a threshold matter, the Court will not review its claim construction rulings. Illumina contends that the Court should ensure that the verdict is supported by a "legitimate" reading of the jury charge (Dkt. 363 at 7) and the Court has the authority to clarify its rulings in the charge to the jury (Dkt. 370 at 10). These arguments are

essentially requests to read limitations into the asserted claims that the Court declined to adopt when it construed the claims. The claim construction order stands on its own, and the Court declines to do now what it declined to do then, which is add certain limitations to the asserted claims of the patent. Therefore, putting these arguments aside, the Court will address the sufficiency of the evidence.

Trial in this matter was mostly a battle of the experts. Both parties called highly qualified and highly accomplished individuals with extensive knowledge in the field of DNA microarrays. On the questions of fact before the Court, the jury sided with Syntrix's expert, Dr. Michael Metzker ("Dr. Metzker"). The verdict is the result of seven citizens' hard work and, as explained more fully below, is supported by the evidence. With regard to the claim constructions, the Court listened intently to each expert's position on how one of ordinary skill in the art would interpret the '682 Patent. While expert testimony is unlikely to be reliable in guiding the court's claim construction (*see Phillips v. AWH Corp.*, 415 F.3d 1303, 1319 (Fed. Cir. 2005)), Dr. Metzker's testimony was persuasive evidence that the Court's rulings were correct. Therefore, these issues will go to the Federal Circuit undisturbed because the Court is not persuaded that any errors exist in its construction of the claims.

**A.  JMOL**

If "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for" a party on a particular issue, "the court may . . . resolve the issue against the party; and grant a motion for judgment as a matter of law . . . ." Fed. R. Civ. P. 50(a)(1). A motion for judgment as a matter of law "is not a patent-law-specific

issue, so regional circuit law applies." *Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1248 (Fed. Cir. 2005). In the Ninth Circuit, the district court must "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." *Ostad v. Oregon Health Sciences University*, 327 F.3d 876, 881 (9th Cir. 2003). "Judgment as a matter of law is proper when the evidence permits only one reasonable conclusion and the conclusion is contrary to that reached by the jury." *Id.* (citing *Monroe v. City of Phoenix*, 248 F.3d 851, 861 (9th Cir. 2001).

### 1. "gelled network"

Illumina contends that "BeadChip does not meet the 'gelled network' requirement because it lacks the required 'aggregation of particles linked together to form a porous three-dimensional network.'" Dkt. 363 at 7 (citing Transcript ("Tr.") at 1779:4–6). Illumina separates its argument into two parts: (1) BeadChips do not contain a three-dimensional network and (2) BeadChips do not contain an aggregation of particles linked together. Dkt. 363 at 7–22. However, Syntrix's expert, Dr. Metzker, testified at length about how the Beadchips met both of these requirements. Tr. at 619:15–622:6. Although Dr. Metzker was subject to cross-examination and Illumina's expert, Dr. Milan Mrksich ("Dr. Mrksich"), provided contrary interpretations of the '682 Patent, Syntrix's evidence is sufficient to sustain the jury verdict. At the very least, the evidence supports more than one reasonable conclusion, one of which is that reached by the jury. Therefore, the Court denies Illumina's motion on this issue.

With regard to the supplemental briefing, the Court finds Illumina's position unpersuasive. While this motion was pending, the Federal Circuit issued its opinion in

*SkinMedica, Inc. v. Histogen, Inc.*, 727 F.3d 1187 (Fed. Cir. 2013), in which it considered the term "culturing cells in three-dimensions." The court found that "the patentees plainly and repeatedly distinguished culturing with beads from culturing in three-dimensions." *Id*. at 1196. The court also found that the patentees "avoided anticipatory prior art during prosecution by asserting that the conditioned medium produced by two-dimensional cultures was inferior and chemically distinct from the conditioned medium produced by three-dimensional cultures." *Id*. As applied to this case, the Court finds that *SkinMedica* is factually distinguishable, specific to that patent in question, and does not provide a binding or persuasive rule such that the Court should alter its claim construction of the '682 Patent to exclude a monolayer of particles.

**2.    "porous coating"**

Illumina challenges the evidence on this limitation on four issues: (1) the BeadChip does not have two distinct layers; (2) the BeadChip does not have a continuous coating; (3) the BeadChip does not have a substantially uniform thickness; and (4) the BeadChip does not have void regions. Dkt. 363 at 24–26. First, Dr. Metzker testified that the BeadChip had a silicon dioxide layer on top of a silicon layer, which is sufficient evidence to support the reasonable conclusion that the BeadChip contains a substrate and a porous coating. Tr. 547–549, 574. Therefore, the Court denies Illumina's motion on this issue.

Second, Illumina argues that the BeadChip does not have a "continuous" coating with "virtually no discontinuities or gaps." Dkt. 363 at 24–25. Dr. Metzker testified that a person of ordinary skill in the art would interpret this limitation to mean a coating with

1   90% material and 10% discontinuities or gaps. Tr. 597–598.  The Court finds that 90% is
2   not an unreasonable interpretation of "virtually."  Moreover, the evidence that 99% of
3   BeadChip products meet this interpretation of the limitation is sufficient evidence to
4   support the verdict of infringement.  With regard to the issue of Dr. Metzker changing his
5   opinion from 98% during his deposition to 90% at trial, the Court finds that the alteration
6   was adequately explained by Syntrix and does not undermine Dr. Metzker's credibility
7   on this issue such that the evidence should be ignored as not credible.  Therefore, the
8   Court denies Illumina's motion on this issue.

9     Third, Illumina argues that the BeadChip does not have a substantially uniform
10  thickness and that the reasonable interpretation of this limitation should be the height of
11  the largest bead in the network compared to the height of an empty well, essentially
12  100% variation.  Dkt. 363 at 25–26.  This interpretation is either unreasonable, or, at the
13  very least, one of many reasonable interpretations.  On the other hand, Dr. Metzker's
14  interpretation of a weighted average over the entire surface area of the coating was
15  reasonable and supported by sufficient evidence that the BeadChip products met this
16  limitation.  Therefore, the Court denies Illumina's motion on this issue.

17    Fourth, Illumina argues that the BeadChip does not contain void regions in the
18  porous coating.  Dkt. 363 at 26–27.  It is undisputed that there are void regions between
19  the wells and the beads.  What is disputed is whether the silicon dioxide layer containing
20  the wells can be considered the porous coating.  *See* Dkt. 367 at 27–28.  This issue has
21  already been resolved in Syntrix's favor.  Therefore, the Court denies Illumina's motion
22  on this issue.

### 3. Invalidity

Illumina argues that the '682 Patent is invalid for three reasons: (1) it lacks an adequate written description, (2) the priority date of the patent is no earlier than December 1, 1998, and (3) the disclosed subject matter is anticipated. Dkt. 363 at 27–36.

#### a. Adequate Written Description

The written description must convey with reasonable clarity to those skilled in the art that, as of the filing date sought, the inventor was in possession of the invention, and demonstrate that by the disclosure in the specification. *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351–52 (Fed. Cir. 2010) (en banc).

In this case, Illumina argues that the patent lacks an adequate written description because (1) the inventor disclaimed particles less than 1000 Å and (2) the patent does not describe monolayers of beads. Dkt. 363 at 27–30. These are both issues of law that were addressed in the Court's claim construction order. *See* Dkt. 75 at 11–15. The Court declines to reconsider that order. Therefore, the Court denies Illumina's motion on these issues.

#### b. Priority Date

Although Illumina's argument is titled that the priority date of the patent is "no earlier" than December 1, 1998, the substance of the argument is that the patent is not entitled to a priority date before the asserted prior art references, the Walt patents. *See* Dkt. 363 at 30–32. To enjoy a priority date earlier than a prior art reference, an inventor must prove conception before the priority date of that reference and reasonable diligence over the entire period from just before the priority date of the reference through the date

1 of his reduction to practice. *Griffith v. Kanamaru*, 816 F.2d 624, 626 (Fed. Cir. 1987).

2 "[A]n inventor's testimony concerning his diligence [must] be corroborated." *Brown v.*

3 *Barbacid*, 436 F.3d 1376, 1380 (Fed. Cir. 2006).

4     In this case, Illumina argues that Syntrix failed to produce sufficient evidence of

5 corroboration. Dkt. 363 at 31. The Court disagrees. Dr. Zebala drafted the lengthy and

6 complicated patent application. To accomplish this, he relied on a guide to drafting

7 patents that showed signs of extensive use. Moreover, he testified that he relied on

8 numerous other sources, some found on microfiche, which is corroborated by similar

9 phrases in the '628 Patent. This evidence is sufficient to corroborate Dr. Zebala's

10 diligence from at least the prior art priority date of September 11, 1998. It should also be

11 noted that the prior art was reduced to practice in "late 1996" and, with the help of a

12 patent attorney to draft the application, the application was filed in March of 1997. Tr.

13 1166–1169. This is credible and sufficient persuasive circumstantial evidence supporting

14 Dr. Zebala's declared diligence because, in this complicated area of technology, an

15 unskilled patent drafter would require at least as much time as a skilled patent drafter to

16 draft an adequate application. Therefore, the Court denies Illumina's motion on this

17 issue.

18         **c.    Anticipation**

19     Illumina argues that the '628 Patent was anticipated by the Walt Patents. Dkt. 363

20 at 32–36. However, because the '628 Patent is entitled to a priority date before the Walt

21 Patents, the Walt Patents are not prior art and may not be relied upon to invalidate the

22

'628 Patent as anticipated. *See* Dkt. 226 at 15. Therefore, the Court denies Illumina's motion on this issue.

### 4. Reasonable Royalty

Upon a showing of infringement, a patentee is entitled to "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer." 35 U.S.C. § 284. A "reasonable royalty" derives from a hypothetical negotiation between the patentee and the infringer when the infringement began. *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 868 (Fed. Cir. 2010). The burden of proving damages falls on the patentee. *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381 (Fed. Cir. 2003). The patentee can meet that burden by producing evidence relating to the "comprehensive (but unprioritized and often overlapping) list of relevant factors for a reasonable royalty calculation [set forth] in *Georgia–Pacific Corp. v. United States Plywood Corp.,* 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970)." *ResQNet.com*, 594 F.3d at 869.

In this case, Syntrix has met its burden of producing sufficient evidence to support the reasonable royalty of 6%. It is undisputed that this royalty rate was based off of Illumina's license with Tufts University. Pursuant to that agreement, Illumina licensed two Walt Patents, in addition to other patents. Illumina has consistently argued that the '682 Patent is anticipated and/or obvious in light of the Walt Patents, which essentially is an admission that the technologies are related. Having established the similarities of the technologies in question, the remaining issue is the difference between the 6% royalty the jury awarded and the 3% royalty in the Tufts License. On this issue, Syntrix's expert

explained the difference between a commercial license versus a license with a university, different bargaining positions when the technology is commercialized versus the situation where the licensee does not have a product on the market yet, and the separate agreements Dr. Walt negotiated with Illumina. Tr. 849–875. The Court finds that this is sufficient evidence to support a royalty rate higher than 3%, and the 6% royalty rate is not unreasonable. Therefore, the Court denies Illumina's motion on this issue.

**B.   New Trial**

In the alternative to judgment as a matter of law, Illumina moves for a new trial. Dkt. 363 at 38–39. Illumina argues that the jury verdict goes against the great weight of evidence and that the jury instructions were erroneous insofar as they did not reflect the proper claim construction. *Id*. The Court disagrees because Syntrix produced sufficient evidence to support the verdict and the jury instructions were consistent with the Court's claim construction order. Therefore, the Court denies Illumina's motion for a new trial.

## IV. ORDER

Therefore, it is hereby **ORDERED** that Illumina's motion for judgment as a matter of law or new trial (Dkt. 363) is **DENIED**.

Dated this 4th day of November, 2013.

BENJAMIN H. SETTLE
United States District Judge